# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JIMMY W. BURROUGHS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:11-CV-2541-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

Plaintiff Jimmy W. Burroughs ("Mr. Burroughs") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for Supplemental Security Income ("SSI").[1] Mr. Burroughs timely pursued and exhausted his administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or disability insurance benefits ("DIB") under the Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Burroughs was a fifty-year-old male at the time of his hearing before the administrative law judge (the "ALJ") held on September 8, 2010. (Tr. 27, 30). In terms of education, Mr. Burroughs did not complete high school, but he did obtain a GED. (Tr. 30).

Mr. Burroughs's prior work experience was for a limited period as a construction laborer. (Tr. 32). Mr. Burroughs has spent a significant part of his adult life in prison and was most recently released on March 19, 2009. (Tr. 31).

Mr. Burroughs protectively applied for SSI on December 16, 2008. (Tr. 12, 38). Mr. Burroughs maintains that he became disabled, as amended, on December 16, 2008, due to glaucoma and dysthymia. (Tr. 12, 30, 38). His claim was denied initially on March 4, 2009. (Tr. 12, 38).

On March 31, 2009, Mr. Burroughs timely requested a hearing before an ALJ. (Tr. 12, 55). A video hearing was held on September 8, 2010, in which Mr. Burroughs appeared in Huntsville, Alabama, and the ALJ presided from Greenville,

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

South Carolina. (Tr. 12, 27).

On November 5, 2010, the ALJ concluded Mr. Burroughs was not disabled as defined by the Act and denied his SSI application. (Tr. 12-23). On November 16, 2010, Mr. Burroughs submitted a request for review of the ALJ's decision. (Tr. 7). On May 10, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Mr. Burroughs becoming the final decision of the Commissioner. (Tr. 1).

On July 11, 2011, Mr. Burroughs initiated his lawsuit with this court asking for a review of the ALJ's decision. (Doc. 1). On December 19, 2011, Mr. Burroughs filed a brief (Doc. 7) in support of his appeal, and on January 27, 2012, the Commissioner answered with his responsive brief. (Doc. 9). Mr. Burroughs elected not to file a reply brief. This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.[3]

---

[3] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Howard v. Astrue*, No. 3:10-CV-527-VEH, (Docs. 15, 16) (Dec. 16, 2010) (reversing and remanding when RFC finding is not supported by substantial evidence); *Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (same); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); Cole-Smith v. Astrue, No. 2:11-CV-2857-VEH, (Docs. 11, 12) (N.D. Ala.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has

---

May 29, 2012) (same).

been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through June 7, 2012.

>    (1) whether the claimant is currently employed;
>    (2) whether the claimant has a severe impairment;
>    (3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>    (4) whether the claimant can perform her past work; and
>    (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Mr. Burroughs had not engaged in substantial gainful activity since the amended onset date of his disability, *i.e.*, December 16, 2008. (Tr. 14 ¶ 1). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following

severe impairments: affective disorders, personality disorders, disorders of the spine, and glaucoma[.]"  (Tr. 14 ¶ 2).  Accordingly, the ALJ concluded that Mr. Burroughs satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Burroughs did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16 ¶ 3).  Mr. Burroughs does not contest this determination on appeal.

The ALJ then evaluated Mr. Burroughs's RFC at step four, and the claimant was found to have:

> [T]he residual functional capacity to perform less than the full range of light work . . . .  I find claimant can frequently lift or carry 10 pounds, occasionally lift or carry 20 pounds, sit for 6 hours of an 8 hour workday, and stand or walk for 6 hours of an 8 hour workday.  I also find that claimant is limited to performing simple, routine, repetitive tasks for 2 hour periods with occasional public interaction.  I further find claimant must avoid even moderate exposure to hazards and can never climb ladders, ropes, and scaffolds.

(Tr. 20 ¶ 4).[5]

---

[5] The Regulations define light work as:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when

The ALJ determined that Mr. Burroughs "has no past relevant work[.]" (Tr. 22 ¶ 5). Against this backdrop and relying upon the Medical-Vocational Guidelines ("MVG") without the benefit of any testimony from a vocational expert, the ALJ concluded that Mr. Burroughs's impairments did not prevent him from performing "jobs that exist in significant numbers in the national economy . . . ." (*Id.* ¶ 9). The ALJ made this determination despite recognizing that Mr. Burroughs was unable to perform the full range of light work on the basis that "the additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 23).

Because the ALJ ultimately relied directly on an application of the MVG (versus indirectly, as a frame of reference) in reaching his disability determination, he did not identify any specific unskilled light positions suitable for Mr. Burroughs. Accordingly, the ALJ concluded that Mr. Burroughs was not disabled as defined by the Act, and denied his SSI claim. (Tr. 23; *id.* ¶ 10).

---

> it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through June 7, 2012).

## ANALYSIS

In this appeal, Mr. Burroughs generally challenges whether substantial evidence supports the Commissioner's denial of his disability application and raises several separate issues, including whether the ALJ erred (i) in the determination of Mr. Burroughs's RFC and (ii) in his use of the MVG when deciding the fifth disability step without the benefit of a vocational expert. (Doc. 7 at 1, 12). The court turns to the lack of any underlying medical opinion by a physician in support of the ALJ's RFC determination that Mr. Burroughs is capable of performing light work with additional restrictions given his severe physical impairments of disorders of the spine, glaucoma, and the additional condition of left knee degenerative joint disease, which the ALJ identified but never separately expressly determined whether it was severe or non-severe (Tr. 16) as he did with other identified ailments,[6] and agrees with Mr. Burroughs that, under the circumstances of his case, the Commissioner has committed reversible error. Alternatively, the court concludes that the ALJ erred in his exclusive reliance upon the MVG without the benefit of any testimony from a

---

[6] When finding other physical conditions to be non-severe, the ALJ pointed out the lack of any complaints made by Mr. Burroughs regarding them. With respect to Mr. Burroughs's knee disorder, however, the ALJ made no similar observation and instead indicated in a different section of his decision that Mr. Burroughs had complained that "his conditions affected his ability to squat, bend, sit, kneel, climb stairs . . . ." (Tr. 14).

vocational expert when deciding the fifth step of the disability sequential process due to Mr. Burroughs's multiple non-exertional limitations.[7]

I. **IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MR. BURROUGHS'S PHYSICAL IMPAIRMENTS OF LEFT KNEE DEGENERATIVE JOINT DISEASE AND SEVERE SPINE DISORDERS AS WELL AS GLAUCOMA, THE ALJ'S RFC DETERMINATION THAT HE CAN PERFORM A REDUCED RANGE OF LIGHT UNSKILLED WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of his RFC determination for Mr. Burroughs, the ALJ did not identify a medical source opinion[8] or a physical capacities evaluation conducted by a physician that substantiates Mr. Burroughs's ability to perform a reduced range of light work given his physical impairments of left knee degenerative joint disease and severe spine disorders as well as severe glaucoma.[9] Such an omission from the record

---

[7] As a result, the court does not reach the merits of the other issues presented on appeal.

[8] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

[9] The record does contain a physical functional assessment made by a state agency consultant, but the ALJ did not refer to it in his decision. Further, this record does not reflect that such consultant is a physician, but rather a disability specialist. (Tr. 117).

is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his opinion to several records from various medical providers pertaining to Mr. Burroughs. (Tr. 15-16 (summarizing pertinent medical evidence and citing to Ex. 1F-4F, 6F, 8F, 10F-11F, 13F)). However, for the most part, such documentation is reported merely as raw medical findings applicable to Mr. Burroughs. (*See, e.g.*, Tr. 134-35 (office treatment records from Callahan Eye Foundation Hospital); Tr. 136-213 (office treatment records from Kilby Correctional Facility); Tr. 214-225 (office treatment records from IMC Family Medical Clinic); Tr. 226-27 (office treatment records from Palmer Psychiatric Services); Tr. 232-37 (consultative visual examination records); Tr. 243-47 (consultative mental status examination); Tr. 249-262 (psychiatric review technique);Tr. 268-275 (office treatment records from DeKalb Mental Heath Center)).

Moreover, none of these records includes an opinion about the impact of Mr. Burroughs's physical impairments in <u>vocational</u> terms or attaches a physical

capacities evaluation of him.[10] *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted). Instead, the only functional capacity assessment upon which the ALJ did expressly rely in formulating Mr. Burroughs's RFC is the one completed by Dr. Linda Duke (*see* Tr. 21 (referencing Ex. 11 F)), which is strictly limited to an assessment of Mr. Burroughs's <u>mental</u> abilities. (Tr. 263-66).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical

---

[10] The court acknowledges that the ALJ stated in support of his physical RFC determination that Mr. Burroughs "reported that he could lift up to 30 pounds." (Tr. 21). The full context of Mr. Burroughs's self-reporting actually indicated that "[i]f [he] move[d] wrong then [he] will have sharp pains going down [his] right side of [his] back" and that he "was sleeping on an egg crate mattress for [his] back and [he] <u>can't do any lifting or standing for long periods of time</u>. [He] <u>can't lift anything over 30 lbs.</u>" (Tr. 91 (emphasis added)). Moreover, the ALJ rejected Mr. Burroughs's credibility because of his "history of dishonest criminal activity." (Tr. 21). The ALJ, therefore, appears to have only believed Mr. Burroughs when such subjective reporting was arguably consistent with his ability to perform a light exertional level of work. Under such circumstances, the court finds that the information contained in the disability report provided by Mr. Burroughs (Tr. 90-97) cannot serve as substantial evidence supporting the ALJ's conclusion that Mr. Burroughs can perform a reduced range of light work.

capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To

meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Mr. Burroughs's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in his medical records. Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Mr. Burroughs has no relevant past vocational experience. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007); *cf. Reeves v. Heckler*, 734 F.2d 519, 522 n.1 ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citing *Ford v. Sec'y of Health & Human Servs.*, 659

14

F.2d 66, 69 (5th Cir. 1981) (Unit B))).[11]

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Mr. Burroughs by a physician that corroborates the ALJ's determination that he is capable of performing light work with certain non-exertional restrictions despite his physical impairments of left knee degenerative joint disease and severe spine disorders as well as severe glaucoma, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Likewise, the ALJ's determination that Mr. Burroughs can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

---

[11] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

## II. ALTERNATIVELY, THE ALJ COMMITTED LEGAL ERROR IN HIS EXCLUSIVE RELIANCE UPON THE MVG WITHOUT THE BENEFIT OF ANY TESTIMONY FROM A VOCATIONAL EXPERT WHEN DECIDING THE FIFTH STEP OF THE DISABILITY SEQUENTIAL PROCESS.

Alternatively, the court concludes that the ALJ committed reversible error in his exclusive use of the MVG to conclude that Mr. Burroughs was not disabled in the context of <u>all</u> the non-exertional circumstances, which the ALJ found to be appropriately placed on him. As the Eleventh Circuit analyzed in *Foote*:

I. Did the ALJ prove "other work" that Foote could do

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir.1985). The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical–Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). *Heckler v. Campbell*, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983). Pain is a nonexertional impairment. *Walker*, 826 F.2d at 1003. Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (ALJ improperly discounted claimant's testimony about pain and dizziness; on remand,

if such pain is found to significantly limit claimant's activities, the court should use a vocational expert).

If the grids are inapplicable, the Secretary must seek expert vocational testimony. Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986) (affirming district court reversal of ALJ who applied grids). " 'It is only when the claimant can clearly do unlimited types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.' " *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)). "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986) (also quoting *Ferguson v. Schweiker*). . . .

The ALJ must " 'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.' " *Johnson v. Shalala*, 1993 U.S.Dist. LEXIS 8553 (S.D. Ala. May 27, 1993) (quoting *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir.1988)).

*Foote*, 67 F.3d at 1559 (emphasis added).

Here, in an effort to substantiate his exclusive reliance on the MVG, the ALJ

stated:

If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule. 202.20 and Rule 202.13. However, the additional

> limitations have little or no effect on the occupational base of unskilled light work. The inability to ascend and descend ladders or scaffolding, and restrictions against unprotected elevations and proximity to dangerous moving machinery are not significant (SSRs 83-14 and 85-15). Also, claimant is able to carry out simple instructions, make simple work-related decisions, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in a routine work setting. Such are the mental activities generally required by competitive unskilled work (SSRs 85-15 and 96-9p). A finding of "not disabled" is therefore appropriate under the framework with these rules.

(Tr. 23 (emphasis added)).

However, as Mr. Burroughs points out (Doc. 7 at 8), earlier in his decision, the ALJ acknowledged Mr. Burroughs's "history of anger and impulse problems" (Tr. 20) and, as a result, limited Mr. Burroughs's interaction with the public to only occasionally, but then, contradictorily and confusingly, the ALJ did not mention, much less apparently factor in, this non-exertional restriction's impact "on the occupational base of light unskilled work" when relying on the MVG. (*Compare* Tr. 20, *with* Tr. 23). Similarly, the court cannot tell to what extent the ALJ determined that a limiting of Mr. Burroughs to only "2 hour periods" of "simple, routine, repetitive tasks" would have "on the occupational base of light unskilled work." (*Compare* Tr. 20, *with* Tr. 23).

Therefore, the court finds that the ALJ's exclusive reliance on the MVG constitutes reversible error because the ALJ has not adequately shown an

insignificant erosion in the pool of unskilled light jobs appropriate for Mr. Burroughs when considering all of his non-exertional limitations. Thus, the ALJ's disability determination is not supported by substantial evidence for this alternative independent reason.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 19th day of June, 2012.

*/s/ VEHopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge